**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JOERENZE TUCKER, | ) | NO. ED CV 11-1237-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | **AND ORDER OF REMAND** |
| OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS
HEREBY ORDERED that Plaintiff's and Defendant's motions for summary
judgment are denied and this matter is remanded for further
administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on August 12, 2011, seeking review of
the Commissioner's denial of disability benefits.  The parties filed a
consent to proceed before a United States Magistrate Judge on

August 25, 2011.  Plaintiff filed a motion for summary judgment on
January 16, 2012.  Defendant filed a cross-motion for summary judgment
on February 1, 2012.  Plaintiff filed a reply to Defendant's motion on
February 6, 2012.  The Court has taken the motions under submission
without oral argument.  See L.R. 7-15; "Order," filed August 17, 2011.


**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**


Plaintiff, a former cook's helper and commercial cleaner, asserts
disability since June 1, 2004, based on alleged psychological
impairments (Administrative Record ("A.R.") 184, 213, 241, 442-43).
Plaintiff testified to symptoms of allegedly disabling severity (A.R.
441-47, 456-58, 466-67, 473-77, 479-81, 484-86).  Plaintiff's sister
submitted a written statement potentially corroborative of Plaintiff's
testimony (A.R. 193-200).


The Administrative Law Judge ("ALJ") found Plaintiff not disabled
(A.R. 10-18).  The ALJ determined that Plaintiff suffers from:
(1) severe substance-induced psychotic disorder, not otherwise
specified, with schizoaffective features; (2) personality disorder,
not otherwise specified; and (3) mixed substance disorder in
institutional remission since April 2010 (A.R. 12 (adopting medical
expert testimony at A.R. 447, 468)).  The ALJ found that, absent
substance use, Plaintiff retained the capacity to perform a full range
of work at all exertion levels, excluding work involving safety
operations, work requiring hypervigilance, and work with moving
machinery or similar hazards (A.R. 13 (adopting medical expert
testimony at A.R. 449, 470)).  The ALJ found Plaintiff capable of

performing moderately complex tasks of 4- to 5-step instructions (A.R. 13 (adopting medical expert's testimony at A.R. 449, 469-70); but see A.R. 16 (ALJ elsewhere stating that Plaintiff is limited to work in a "habituated setting" – a limitation the medical expert also found to exist at A.R. 449)).  With these limitations,[1] according to the ALJ, Plaintiff could perform his past relevant work as a cook's helper and commercial cleaner (A.R. 16 (adopting vocational expert testimony at A.R. 481-82)).  Alternatively, the ALJ found that Plaintiff could perform other jobs existing in the national economy including linen room attendant, hand packer, and industrial cleaner (A.R. 17-18 (adopting vocational expert testimony at A.R. 483-87)).

The ALJ deemed Plaintiff's testimony not credible to the extent the testimony was inconsistent with the residual functional capacity determination (A.R. 14).  The ALJ also deemed not credible the lay witness observations of Plaintiff's sister, to the extent those observations were inconsistent with the residual functional capacity determination (A.R. 14).

The Appeals Council denied review (A.R. 1-3).

///

///

///

///

---

[1]    The ALJ did not include a limitation to work in a "habituated setting" in the hypothetical questions posed to the vocational expert.  See A.R. 481-83, 486-87 (vocational expert testimony).

1        **STANDARD OF REVIEW**

2

3        Under 42 U.S.C. section 405(g), this Court reviews the

4  Administration's decision to determine if: (1) the Administration's

5  findings are supported by substantial evidence; and (2) the

6  Administration used correct legal standards.  See Carmickle v.

7  Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

8  499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such

9  relevant evidence as a reasonable mind might accept as adequate to

10 support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

11 (1971) (citation and quotations omitted); see Widmark v. Barnhart,

12 454 F.3d 1063, 1067 (9th Cir. 2006).

13

14       **DISCUSSION**

15

16       Plaintiff contends, inter alia, that the ALJ erred in connection

17 with the ALJ's consideration of the opinion of the medical expert.

18 See Plaintiff's Motion at 7-8.  Plaintiff also contends that the ALJ

19 failed to consider properly the residual functional capacity

20 assessment by a state agency physician.  See Plaintiff's Motion at 8-

21 10.  On the present record, the Court agrees.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

4

**I.   <u>Summary of the Medical Record.</u>**

Plaintiff was incarcerated or on parole for much of the relevant time period.[2]  Department of Corrections records show that Plaintiff saw doctors for regular medication visits related to mental health issues from December 2004 through at least November 2009 (A.R. 253-287, 308-35, 341-430).  Plaintiff admitted a history of substance abuse since his mid-teens (A.R. 287).  Plaintiff complained of hearing voices, depression, difficulty sleeping, difficulty concentrating, irritability/anger, mood swings, violence,[3] and paranoia – especially around large groups of people (A.R. 254-60, 262-87, 308-35, 341-420).  Plaintiff's treating psychiatrist initially diagnosed Plaintiff with probable psychotic disorder, not otherwise specified, with a history of substance abuse (A.R. 287; <u>but see</u> A.R. 275, 310 (later diagnoses of schizophrenia); A.R. 328-29 (schizophrenia is "highly unlikely given the emotionally even, and carefully goal directed nature of [Plaintiff's] interactive style")).  Plaintiff was prescribed various psychiatric medications, which produced some reduction in symptoms (A.R. 283, 285-87, 308-35, 341-420).  In February 2008, Plaintiff

---

[2]    Plaintiff filed his application for benefits on March 8, 2008 (A.R. 465-66).  Plaintiff was incarcerated from November 2008 through November 2009 (A.R. 466).  Plaintiff returned to prison for a parole violation sometime in April 2010, for driving under the influence of alcohol (A.R. 466-67).  The record suggests that Plaintiff has been incarcerated much of his adult life.  <u>See</u> A.R. 287 (reporting history of time in county jail since age 20); <u>see also</u> A.R. 277 (reporting juvenile hall placement for assault with a deadly weapon for shooting a young girl).

[3]    Plaintiff's commitment offense for part of his incarceration was spousal abuse (A.R. 318).

reported no complaints, including no issues with hallucinations or
paranoid ideation, and Plaintiff said he was comfortable on his
current medications (A.R. 253).  Similarly, in July 2008, Plaintiff
reported that his medications were working very well.  A treatment
note describes Plaintiff as "stable on this regimen" (A.R. 328).  In
August 2009, Plaintiff reported he was doing well and that he just had
taken the GED exam, but also reported that he had audio hallucinations
and paranoid delusions (A.R. 420).  In November 2009, nine days before
Plaintiff was due to be paroled, Plaintiff reported no hallucinations,
no depression, and was considered stable on his medications (A.R.
408).

State agency physician, Dr. Kevin Gregg, completed a Mental
Residual Functional Capacity Assessment for Plaintiff dated June 9,
2008 (A.R. 288-90).  Dr. Gregg indicated that Plaintiff would have
moderate limitations in: (1) carrying out detailed instructions;
(2)  maintaining attention and concentration for extended periods;
(3)  performing activities within a schedule, maintaining regular
attendance and being punctual with customary tolerances;
(4) completing a normal workday/workweek without psychologically-based
interruptions; and (5) interacting appropriately with the general
public (A.R. 288-89).  Dr. Gregg opined that Plaintiff would be
capable of "NP SRTs," i.e., performing work involving simple
///
///
///
///
///

1  repetitive tasks in a nonpublic setting (A.R. 290).[4]

2

3      In a follow-up Case Analysis form dated September 25, 2008, state

4  agency physician, Dr. H. Amado, agreed with Dr. Gregg's earlier

5  opinion, stating:

6

7      Having reviewed the evidence on file, it appears that the

8      Initial-level determination dated 6/9/08, for unskilled/

9      nonpublic MRFC can be affirmed.  At the [reconsideration]

10     level, there are allegations of worsening but the updated

11     [medical records] from parole clinic again shows that

12     condition is responsive to treatment and that claimant

13     appears clinically stable on current medication regimen, so

14     that [reconsideration] reversal would not be warranted.

15

16  (A.R. 336-37).

17

18      Psychologist J. Baird of the Correctional Institute at Tehachapi,

19  one of many psychologists who worked with Plaintiff in prison (see,

20  e.g., 341-430 (records showing many treatment providers)), completed a

21  Work Capacity Evaluation (Mental) form for Plaintiff dated March 13,

22  2009, based on Dr. Baird's review of the health record, Plaintiff's

23  central file and an interview of Plaintiff (A.R. 339).  Dr. Baird

24

25      _____

26      [4]    In a Psychiatric Review Technique form of the same
        date, Dr. Gregg indicated that Plaintiff would have moderate
        limitations in maintaining social functioning and maintaining
27      concentration, persistence, or pace (A.R. 299).  Dr. Gregg again
        opined that Plaintiff would be capable of "NP SRTs."  See A.R.
28      301; see also A.R. 302-04.

indicated that Plaintiff would have: (1) slight to moderate
limitations in his ability to maintain attention and concentration for
extended periods; (2) moderate limitations in his ability to perform
activities within a schedule, maintain regular attendance, and be
punctual with customary tolerances; (3) slight to moderate limitations
in his ability to make simple work-related decisions; and (4) moderate
to marked limitations in his ability to interact appropriately with
the general public (A.R. 339).  Dr. Baird indicated that Plaintiff's
impairments would cause Plaintiff to be absent from work one to two
times per month (A.R. 339).  Dr. Baird added:

> Additionally, Mr. Tucker reports that when he is on his
> medications, some of the side effects may interfere with his
> ability to work certain jobs, hours, etc.  For example, high
> stress environments for a long period of time would be
> difficult for Mr. Tucker.

(A.R. 339).  Dr. Baird opined that Plaintiff was not a malingerer
(A.R. 339; but see A.R. 375-76 (Baird's treatment note from March 13,
2009 stating: "[Plaintiff] continues to report active mental health
symptoms.  His presentation is not entirely consistent with his
reports.  For example, he reports feeling 'very paranoid' and having
active hallucinations, however, no clinicians (per UHR) have observed
any odd or abnormal behaviors including the appearance of responding
to internal stimuli, appearing distracted, etc.  Additionally custody
staff reports he socializes appropriately and is frequently laughing
and joking with [his] peers.  He has displayed no odd or avoidant
behaviors toward custody or other inmates").  In a treatment note

dated March 16, 2009, Dr. Baird stated that Plaintiff's symptoms were reported to be fairly well managed by Plaintiff's current medication regimen (A.R. 374).

II.   **Summary of Plaintiff's Subjective Complaints, the Lay Witness Statements of Plaintiff's Sister, and the Testimony of the Medical Expert.**

Plaintiff testified that he cannot work because he hears voices that distract him from concentrating for long periods of time (A.R. 442-44).  Plaintiff said he gets agitated when he hears the voices and that his medicine does not help (A.R. 444-45, 480).  Plaintiff also said that his concentration is limited (A.R. 486).

Plaintiff completed a Function Report - Adult form dated April 14, 2008 (A.R. 201-08).  Plaintiff reported that he spends his social time with his wife and children and goes to a parenting class twice a week (A.R. 205).  Plaintiff claimed that he has problems getting along with others in that he sometimes "can get a temper" or does not feel comfortable, and that he associates with less people (A.R. 206).  Plaintiff reportedly has issues with standing, memory, completing tasks, concentration, and getting along with others (A.R. 206).  Plaintiff estimated that he could walk for about 10 minutes before needing to rest (A.R. 206).  When asked how long he could pay attention, Plaintiff answered, "depends, varies from time to time" (A.R. 206).  Plaintiff characterized as "fair" his ability to follow written and spoken instructions, to get along with authority figures, and to handle changes in routine (A.R. 206-07).  Plaintiff did not

know how well he handles stress (A.R. 207).  Plaintiff reported that he has unusual behaviors or fears in that he is always thinking someone is "talking bad about him" (A.R. 207).

Plaintiff remarked:

> I've been told at times when under my meds I seem to be "out of it" as saying at times my mind seems to just drift off as if I look as if I don't know what's going on.  Plus when under my meds I'm not to be exposed to temperatures that reach 90 degrees or higher because of possible black outs. And often at times when under my meds I'm very drowsy and dizzy at times and it appears that at times I'm incoherent. It is very hard to be able to work under these circumstances.  But if I'm not on my meds they figure I could be a threat to myself or others because of my mental disability that I have.

(A.R. 208).

Plaintiff's sister, Kamesha Tucker, completed a Function Report - Adult - Third Party for Plaintiff dated April 15, 2008 (A.R. 193-200). Kamesha reported that she spends approximately 12 hours per day with Plaintiff (A.R. 193).  Plaintiff has three children for whom Kamesha sometimes helps to care (A.R. 194).  Kamesha reported that to her knowledge Plaintiff spends time just with immediate family, and that she really does not know how often Plaintiff goes places or takes part in social activities (A.R. 197).  Kamesha stated that Plaintiff is

very distant and gets argumentative at times and he "does not go out much at all anymore" (A.R. 198).  Plaintiff reportedly is "not comfortable around a lot of people" (A.R. 199).  Kamesha indicated that Plaintiff's condition affects his understanding, concentration, and getting along with others and explained, "sometimes I truely [sic] believe that in his mind he's somewhere else" (A.R. 198).  Kamesha noted that Plaintiff could pay attention "not long sometimes" (A.R. 198).  When asked how well Plaintiff follows written and spoken instructions, Kamesha answered, "I really don't know.  He know [sic] how to read a bus book" and "I really don't know" (A.R. 198).  Similarly, when asked how well Plaintiff handles changes in routine, Kamesha responded, "I really don't know" (A.R. 199).  Kamesha also had "[no] idea how [Plaintiff] gets along with authority figures" (A.R. 199).  Finally, Kamesha remarked:

> I really do [believe] my brother needs help from SS because
> I [truly believe] he is unstable mentally especially without
> his medication that he takes.  I hope I was a help for him
> and for you also in his application process.

(A.R. 200).

Medical expert, psychologist Dr. Joseph Malancharuvil, diagnosed Plaintiff with substance-induced psychotic disorder with schizo-affective features, personality disorder, not otherwise specified, and mixed substance abuse in institutional remission (A.R. 447, 468).  At the first administrative hearing, Dr. Malancharuvil opined that when sober and compliant with medications, Plaintiff would have mild

impairment in his activities of daily living, mild to moderate
impairment in social functioning, and mild to moderate cognitive
disruptions with persistence and pace (A.R. 448-49).[5]  Dr.
Malancharuvil opined that, notwithstanding these impairments,
Plaintiff was capable of performing moderately complex tasks of 4- to
5-steps in a "habituated setting," but should avoid tasks requiring
hypervigilance or safety operations (A.R. 449).

At the second administrative hearing, Dr. Malancharuvil similarly
opined that when Plaintiff is off drugs Plaintiff would be moderately
impaired in social functioning (A.R. 469).  Dr. Malancharuvil opined
that Plaintiff was capable of performing moderately complex tasks of
4- to 5-steps, explaining that Plaintiff had gone to college
preparation courses (A.R. 469-70; see also A.R. 348 (noting courses)).
Plaintiff would be precluded from safety operations or operating
hazardous machinery (A.R. 470).  Dr. Malancharuvil continued:

> [T]he record is consistent with his testimony.  The medical
> records suggests [sic], the earlier record suggests 2005,
> 2006, suggest that . . . when [Plaintiff is] not using
> drugs, his mental status is essentially okay apart from
> personality difficulties that he has had since . . . he shot
> up people as a teenager. . . just because he was mad.  And,

---

[5]    Dr. Malancharuvil observed that there was no
psychiatric evaluation for Plaintiff in the record for him to
review (A.R. 450).  The hearing was continued so that Plaintiff
could undergo psychological testing (A.R. 458).  However, when
the matter returned for the second hearing, no testing had been
done because Plaintiff had been incarcerated (A.R. 463-64).

1     so, it is [inaudible] issue that is stemming from his

2     personality problems.  And he has been abusing

3     methamphetamines . . . . [I]n April [2009], . . .

4     [Plaintiff's] mental status . . . was essentially intact.

5     He was in prison at that time.  So, when he is in prison, he

6     seems to be mentally stable and cognitively intact,

7     essentially.  So, but he continues to have a [inaudible]

8     mood and the underlying personality problem is still

9     persistent.  And we don't have a formal technically

10    ordinarily [sic] consultive evaluation for this.  But he is,

11    psychiatric records clearly indicate his primary problem is

12    using substances while he's also taking psychiatric

13    medications.

14

15  (A.R. 470-71).

16

17  **III.  The ALJ Erred in the ALJ's Consideration of the Medical Opinions**

18  **      in Relation to Plaintiff's Residual Functional Capacity.**

19

20      The ALJ purportedly relied on the opinions of the non-examining

21  medical expert (Dr. Malancharuvil) and the non-examining state agency

22  physicians in determining Plaintiff's residual functional capacity.

23  See A.R. 13, 15-16 (giving "great weight" to these opinions).

24  However, the ALJ did not fully account for the limitations these

25  doctors found to exist.

26

27      First, as noted above, the medical expert and the ALJ's decision

28  both stated that Plaintiff would be limited to "moderately complex

13

tasks, involving up to 4-5 steps of instruction, <u>in a habituated</u>
<u>setting</u>." (A.R. 16, 449, 469-70) (emphasis added). Yet, when the ALJ
questioned the vocational expert concerning the ability of a person
with Plaintiff's limitations to perform work, the ALJ failed to
include in the question the limitation to a "habituated setting." <u>See</u>
A.R. 481-83, 486-87 (vocational expert testimony). Where a
hypothetical question fails to "set out all of the claimant's
impairments," the vocational expert's answers to the questions cannot
constitute substantial evidence to support the ALJ's decision. <u>See</u>,
<u>e.g.</u>, <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991); <u>Gamer v.</u>
<u>Secretary</u>, 815 F.2d 1275, 1280 (9th Cir. 1987); <u>Gallant v. Heckler</u>,
753 F.2d 1450, 1456 (9th Cir. 1984). From the current record, it is
unclear whether a person limited to work in a "habituated setting"
could perform the jobs the vocational expert identified, including
Plaintiff's past relevant work.[6] Thus, the ALJ's error may have been
material.

Second, although the ALJ purported to rely on the state agency
physicians' opinions in determining Plaintiff's residual functional
capacity, those opinions are inconsistent with the medical expert's
opinion and with the ALJ's residual functional capacity
///

---

[6] The ALJ's decision expressly "accepts and adopts [the
medical expert's] summary of [Plaintiff's] records," apparently
including the stated limitation to a "habituated setting" (A.R.
16). If, however, the ALJ did not in fact adopt the medical
expert's opinion regarding the limitation to a "habituated
setting," the ALJ should have explained the reason for rejecting
this opinion. <u>See</u> <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95
(9th Cir. 1984) (ALJ must provide an explanation when the ALJ
rejects "significant probative evidence").

1   determination.[7]   As discussed above, the state agency physicians

2   opined that Plaintiff is capable of only <u>non-public</u> work involving

3   <u>simple</u> repetitive tasks.  <u>See</u> A.R. 290, 301, 336-37.  Especially given

4   Plaintiff's acknowledged personality disorder, history of violence,

5   and the statements of Plaintiff, Plaintiff's sister, and his treating

6   psychologist Dr. Baird[8] concerning limitations on Plaintiff's ability

7   to get along with others, the ALJ should have expressly considered

8   these opinions of the state agency physicians and explained any basis

9   for rejecting such opinions.  <u>See</u> Social Security Ruling 96-6p (ALJs

10  "must explain the weight given" to the opinions of state agency

11  physicians); <u>accord</u> <u>Bain v. Astrue</u>, 319 Fed. App'x 543, 546 (9th Cir.

12  2009); <u>see also</u> <u>Vincent v. Heckler</u>, 739 F.2d at 1394-95 (ALJ must

13  provide an explanation when the ALJ rejects "significant probative

14  evidence").

15  ///

16  ///

17  ///

18  ///

19  

20      [7]      To the extent Dr. Malancharuvil's opinion may be
    contradicted by "all other evidence in the record," Dr.
21  Malancharuvil's opinion may not serve as substantial evidence to
    support an Administrative decision.  <u>See</u> <u>Andrews v. Shalala</u>, 53
22  F.3d 1035, 1041 (9th Cir. 1995); <u>Curry v. Sullivan</u>, 925 F.2d
    1127, 1130 n.2 (9th Cir. 1990).
23  

24      [8]      The ALJ described Dr. Baird's opinion as that Plaintiff
    has "various functional limitations, mostly slight, in a
25  checklist style disability questionnaire" (A.R. 15).  The ALJ did
    not mention specifically Dr. Baird's opinion that Plaintiff would
26  have moderate to marked limitations in his ability to interact
    appropriately with the general public.  <u>See</u> A.R. 15 (ALJ
27  summarily rejecting Dr. Baird's opinion); A.R. 339 (Dr. Baird's
    opinion regarding Plaintiff's limitations with public
28  interaction).

IV.  **Remand is Appropriate.**

Because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors,[9] remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).

///

///

///

///

///

---

[9]     There are outstanding issues that must be resolved before a proper disability determination can be made in the present case.  For this reason, the Ninth Circuit's decision in Harman v. Apfel, 211 F.3d 1172 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) ("Harman") also does not compel a reversal rather than a remand of the present case.  In Harman, the Ninth Circuit stated that improperly rejected medical opinion evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  Harman at 1178 (citations and quotations omitted). Assuming, arguendo, the Harman holding survives the Supreme Court's decision in INS v. Ventura, 537 U.S. 12, 16 (2002), the Harman holding does not direct reversal of the present case.  It is not clear that the ALJ would be required to find Plaintiff disabled for the entire period of claimed disability if the medical opinions were fully credited.  There is no vocational expert evidence concerning whether there exists work that could be performed by a person having the limitations Dr. Baird and the state agency physicians found to exist.

**CONCLUSION**

For all of the foregoing reasons,[10] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   March 15, 2012.


_____/S/_____
                CHARLES F. EICK
        UNITED STATES MAGISTRATE JUDGE

---

[10]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.